**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EDWARD BENSON, others similarly situated,<br><br><br>Plaintiff,<br><br><br>vs.<br><br>FORD MOTOR COMPANY<br>&<br>CAMEL GROUP (USA) BATTERY, INC.<br>and related corporate entities<br><br>Defendant. | **Civil Action No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Edward, ("Plaintiff"), individually and on behalf of all others similarly situated, respectfully submits the following Class Action Complaint against Defendants Ford Motor Company ("Ford") and the collective Camel Group (USA) Battery, Inc., entities ("Camel Battery" or "Camel Group"). Plaintiff makes the following allegations, except as to allegations specifically pertaining to Plaintiff, upon information and belief based on, among other things, the investigation of counsel, and review of public documents.

## PRELIMINARY STATEMENT

1.      Vehicle manufacturers have certain basic rules and procedures that must be followed. When a vehicle manufacturer sells a vehicle, it has a duty to ensure that the vehicle functions properly and safely for its advertised use and is free from defects. When a vehicle manufacturer discovers a defect, it must explicitly disclose the defect and make it right or cease selling the vehicle. When a vehicle manufacturer provides a warranty, it must stand by that warranty. This case arises from both Defendants breach of its duties and rules.

1

2.      Battery manufacturers have certain basic rules and procedures that must be followed. When a battery manufacturer sells a battery, it has a duty to ensure that the battery functions properly and safely for its advertised use and is free from defects. When a battery manufacturer discovers a defect, it must explicitly disclose the defect, make it right, and cease selling the product. When a battery manufacturer provides a warranty, it must stand by such warranty. This case arises from both Defendants' breach of their duties and rules.

3.      Plaintiff brings this action on behalf of himself and all similarly situated persons who purchased: 1) 2021-2023 Ford Bronco Sport; or 2) 2022-2023 Ford Maverick ("Class Vehicles") equipped with a 12-volt battery powered by Camel Group Battery ("Class Batteries")

4.      This action is brought to remedy various violations of law in connection with Defendants' manufacturing, marketing, advertising, selling, warranting, and servicing of the Class Vehicles and Class Batteries.

5.      The Class Vehicles have malfunctions regarding their batteries (a.k.a. "Class Batteries). Specifically, the defective 12-volt batteries (manufactured by Camel Group Battery of China), have an internal weld and cast-on-strap (COS) susceptible to failure which could cause sudden power loss and stalling.

6.      In late January 2025, Ford recalled nearly 273,000 of the above referenced Class Vehicles ("Recall") with anticipated Notifications to consumers to be perfected in February 2025. The Recall is based upon defective Class Batteries installed into the Ford Bronco Sport and Ford Maverick for the dates specified above.

7.      The allegations herein are based on personal knowledge as to Plaintiff's own experience and are made as to other matters based on an investigation by counsel, including analysis of publicly available information.

## JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, the relevant portion of which is codified at 28 U.S.C. §1332(d). The aggregated claims of the individual Class members exceed the sum or value of $5,000,000, exclusive of interests and costs, and this is a class action in which more than two-thirds of the proposed plaintiff class, on the one hand, and Defendant, on the other, are citizens of different states.

9.    Ford sells vehicles internationally, throughout the United States and within this judicial district. This Court has personal jurisdiction over the Defendant because the Defendant has also purposefully availed itself of the laws, rights, and benefits of the State of Pennsylvania. *See:* Mallory v. Norfolk Southern Railway Co., 143 S.Ct. 2028, 600 U.S.122, 216 L.Ed. 815 (2023).

10.    Camel Group Battery is an international distributor of batteries placing their products into the stream of commerce throughout the United States. Defendant's publicly listed headquarters and principal place of business are located in Ann Arbor, Michigan.  As discussed more fully below, multiple subsidiary companies that comprise the "Camel Group" have registered agents and/or directors and officers with formal corporate address located within the United States. This Court has personal jurisdiction over the Defendant because the Defendant has also purposefully availed itself of the laws, rights, and benefits of the State of Pennsylvania. *See:* Mallory v. Norfolk Southern Railway Co., 143 S.Ct. 2028, 600 U.S.122, 216 L.Ed. 815 (2023).

11.    Venue is proper in this District under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Ford Motor Company sells and distributes their vehicles throughout the United States and within this District.

Camel is an intentional business with American headquarters and provides its batteries to Ford Motor Company for automobiles sold within the United States and within this District.

## PARTIES

12.     Edward Benson is a citizen of the State of Wisconsin and resides in Janesville, Wisconsin. Janesville is located within Rock County, Wisconsin.

13.     Ford Motor Company is a corporation organized and in existence under the laws of the State of Delaware with its principal place of business in Dearborn, Michigan. Defendant's corporate headquarters are located at One American Road, Dearborn, Michigan, 48126.

14.     Ford Motor Company designs, manufactures, markets, distributes, services, repairs, sells, and leases vehicles, including the Class Vehicles, nationwide. Ford Motor Company is the warrantor and distributor of the Class Vehicles in the United States.

15.     Ford Motor Company through various entities, markets, distributes, warrants, and sells Ford automobiles and parts for those automobiles, including the Class Vehicles, in multiple locations across the United States.

16.     The Camel Group is an international corporation with various related subsidiaries organized and in existence under the laws of the State of Michigan with its principal place of business in Arbor, Michigan. Defendant's corporate headquarters are located at 4355 Varsity Drive, Ann Arbor MI 48108.[1]

17.     Camel Energy Holdings, LLC is part of the "Camel Group" which was organized as a Michigan Corporation in 2016. This entity's registered agent is Mark V. Huesel listing 350

---

[1] https://www.camelbatt.com/welcome.html

S. Main Street, Suite 300 Ann Arbor, MI 48104 as his address. The entity lists 4355 Varsity Drive, Ann Arbor, MI 48108 as its Registered Office Mailing Address in corporate filings.[2]

18.  Camel Energy Manufacturing, LLC is part of the "Camel Group" which was organized as a Michigan Corporation in 2022. This entity's registered agent is Mark V. Huesel listing 350 S. Main Street, Suite 300 Ann Arbor, MI 48104 as his address. The entity lists the same address as its Registered Office Mailing Address in corporate filings.[3]

19.  Camel Group (USA) Battery, Inc. is part of the "Camel Group" which was organized as a Michigan Corporation in 2015. This entity's registered agent is Mark V. Huesel listing 350 S. Main Street, Suite 300 Ann Arbor, MI 48104 as his address. The entity does not list its Registered Office Mailing Address in corporate filings.[4]

20.  Camel designs, manufactures, markets, distributes, services, repairs, and sells, batteries, for use in various automotive products including the Class Vehicles, nationwide. Camel is the warrantor and distributor of the 12-volt batteries installed within the Class Vehicles sold in the United States.

---

[2]
https://cofs.lara.state.mi.us/CorpWeb/CorpSearch/CorpSummary.aspx?token=nBxILn58HwVtv4JMRDwTm1cWbl opjmzIgq3FCQzRMH7Z0mRAdeXC1CSq3qj8onb4lnR9QerGUGr0CtdL+XtLHzfImwMoKs6I0251YorxZ3mbLpe YeQAX2T9Fj1gop0iOegb6VxhwKiIqhFvJMAssZ8Uv44FWs4ln74ZIykEg53qp3/gqBb0xA2PRfG6POrYYyDXv8 OzJw9u2KJq1zHUgqS4hi287MQILAAK25QA6Yuv6JXhn3seU11qHxbxuWgx72GNvo9hn8RQv6LHwP3+H/VL DSzabdPS5MqFZakI43tpOfgB1tctB+ih6XbjbcMuU7dLz1BC9idg8rnUmYcp9O9BxmVuIp158
[3]
https://cofs.lara.state.mi.us/CorpWeb/CorpSearch/CorpSummary.aspx?token=nBxILn58HwVtv4JMRDwTm1cWbl opjmzIgq3FCQzRMH7Z0mRAdeXC1K4V5JyhrBuNQDpRh4NG8tWEYbOxW4joSWofFJ1nkMG1ALxuwKcyW UZc6Y0K/0WTzZoSbgGLYdZeSChWPon/IscsIiJvkGt/hvTuanVmrtdt6eC1rgsb7MWINOtZKjGXCas3844ILFXFT JHzvUO31RMqdl1bJ05PDNjt8wVU4bi2XtzfKf4xois38jc3vkQ3h0JEsnXnx/y9dg5DL2RepO/EU7Tc2qomnNTQtv eSIh50Wu64gDerhiIajPDOC/WenBxgsWmNZQ21W9rcoXajtKTQpvJRTtUTtM5jkqSqCR0S
[4]
https://cofs.lara.state.mi.us/CorpWeb/CorpSearch/CorpSummary.aspx?token=nBxILn58HwVtv4JMRDwTm1cWbl opjmzIgq3FCQzRMH7Z0mRAdeXC1OuIcO3rIeXGrIFhnTHpPA5mgjjhw4wxVeU5fY/uA7XVWarxXS84fvjvUeZ JU+9EqFcNfxZcNjrjKNqEICZ3vbyzSDqzFqZbA6Z15JzGToalr7+XN03KuJ9Tpwwa1VXbdu+3k+yVUE0vZGVQ rZ7shT03tpOo2jdjLrm9L3SoRdy5yl38NU32Tg5aUzS/Tt73ubvTrdr7UIMm2Gh6Zev5KQh2hk11BFxNvsz+tGsEF w8JcMnl8l4dF2PwVPevuuf9OnRs+FhQaqZP9acYNC6LyPNeguLms13bgFgFjpmMVrM5



**FACTUAL ALLEGATIONS**

21.     In 2024, Plaintiff purchased a Ford Bronco Sport from Gordie Boucher Ford/ Lincoln Dealership of Janesville, Wisconsin.

22.     Based on Ford's active and persistent promotions touting the quality of its vehicles and his admiration of Ford vehicles, Plaintiff considered Ford a quality company with a strong reputation for producing reliable vehicles.

23.     In addition to Ford's reputation through its marketing and promotion, Plaintiff decided on the Ford Bronco because he believed it was a high-quality vehicle after a salesman convinced him that the vehicle was highly reliable.

24.     Plaintiff recalls asking the salesperson whether the vehicle was subjected to any "recalls" and was told that it was not.

25.    The battery has failed on Plaintiff numerous times causing him to replace the battery after approximately 34,000 miles of driving the Ford Bronco.

26.    At one point, the battery failures became so prominent that Plaintiff had to disengage the "start/stop" feature of the vehicle for fear that it would stall or stop and not restart while in traffic.

27.    Plaintiff advises the need of having to purchase and carry a "battery booster" for fear of the battery's failure.

28.    Plaintiff has never been informed of any recalls or defects related to his vehicle's battery by anyone affiliated with Ford and has heard of the battery defects on social media and in the news.

29.    From 2021-2023, if not earlier, Camel has designed, manufactured, distributed, sold, the recalled 12-volt batteries that Ford installed into the Class Vehicles. Defendant Ford has sold, directly or indirectly, through dealers and other retail outlets, nearly 273,000 Class Vehicles nationwide.

30.    The result of Defendants' recall, which includes a free fix and repair clause, will cost Plaintiff hours of his time.

31.    Assuming that the Recall was effective and offered a true fix, Plaintiff is still burdened with a vehicle that has been devalued by Defendant's actions because the value of a car with a known history of a faulty design is worth less than a car with properly working battery system or at least a history of a working battery system with no critical issues.

32.    Given the above, there is a cognizable risk inherent within this Recall. Unless Defendants are to issue a more comprehensive recall to truly fix the root cause of the Defect, it is foreseeable, and should be expected, that the Class Vehicles' battery systems will fail once again.

Defendants' Recall is no more than an ineffective waste of time as there is no true fix for the Defect.

33.    In all, Defendants' Recall leaves more questions than answers regarding the Class Vehicles' safety and as such results in a diminution in value for the vehicles in question.

34.    In addition to the amount of time spent in repair, Plaintiff, like every other Class Member, must spend time and money to transport himself and his defective Class Vehicle to a Ford certified mechanic.

35.    In all, Defendants' Recall amounts to tens of thousands of hours and dollars needlessly taken from Plaintiff and other Class Vehicle owners.

**APPLICABLE WARRANTIES**

36.    Ford sold the Class Vehicles with written express warranties.

37.    Camel sold its 12-volt battery (Class Battery) with express warranties.

38.    For the Class Vehicles, Ford offered a written express basic warranty covering the Class Vehicles.

39.    Ford provides these warranties to buyers after the purchase of the Class Vehicles is completed; buyers have no pre-sale knowledge or ability to bargain as to the terms of the warranties.

40.    Camel Battery offers express warranties for its batteries based upon a duration of time or an amount of use as defined in terms of mileage. Consumers purchasing vehicles equipped with Camel Battery's defective battery have no pre-sale knowledge or ability to bargain as to the term of the warranties.

41.     However, Class members complained to dealers about the Battery Defect but did not receive an adequate repair, breaching the express and implied warranties provided by Ford and Camel Battery.

**FRAUDULENT OMISSION/CONCEALMENT ALLEGATIONS**

42.     Absent discovery, Plaintiff is unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at Ford and Camel responsible for making false and misleading statements regarding the Class Vehicles and Class Batteries. Collectively, Ford and Camel Battery are in possession of all of this information. Plaintiff's claims arise out of Defendants' fraudulent omission/concealment of the Battery Defect, despite their representations about the quality, safety, and comfort of the Class Vehicles.

43.     Plaintiff alleges that at all relevant times, including specifically at the time he and Class members purchased their Class Vehicle, Defendants knew, or were reckless in not knowing, of the Battery Defect; Defendants had a duty to disclose the Battery Defect based upon their exclusive knowledge; and Defendants never disclosed the Battery Defect to Plaintiff or the public at any time or place in any manner other than a halfhearted, inadequate recall.

44.     Plaintiff makes the following specific concealment/omission-based allegations with as much specificity as possible absent access to the information necessarily available only to Defendant:

a. **Who:**  Defendants actively concealed and omitted the Battery Defect from Plaintiff and Class members while simultaneously touting the safety and dependability of the Class Vehicles, as alleged herein. Plaintiff is unaware of, and therefore unable to identify, the true names and identities of those specific individuals as Defendants are responsible for such decisions.

b. **What:**  Defendants knew, or were reckless or negligent in not knowing, that the Class Vehicles contain the Battery Defect, as alleged herein. Defendants concealed and omitted the Battery Defect while making representations about the safety, dependability, and other attributes of the Class Vehicles, as alleged herein.

c. **When:**  Defendants concealed and omitted material information regarding the Battery Defect at all times while making representations about the safety and dependability of the Class Vehicles and Class Batteries on an ongoing basis, and continuing to this day, as alleged herein. Defendants still have not disclosed the truth about the full scope of the Battery in the Class Vehicles to anyone outside of their respective entities. Defendants have never taken any action to inform consumers about the true nature of the Battery Defect in Class Vehicles.

d. **Where:**  Defendants concealed and omitted material information regarding the true nature of the Battery Defect in every communication they had with Plaintiff and Class members and made representations about the quality, safety, and comfort of the Class Vehicles. Plaintiff is aware of no document, communication, or other place or thing, in which Defendants disclosed the truth about the full scope of the Battery Defect in the Class Vehicles to anyone outside of their respective entities. Such information is not adequately disclosed in any sales documents, displays, advertisements, warranties, owner's manuals, or on Defendants' websites.  There are channels through which Defendants could have disclosed the Battery Defect, including but not limited to, (1) point of sale communications; (2) the owner's manual; and/or (3) direct communication to Class members through means such as state vehicle registry lists.

e. **How:**  Defendants concealed and omitted the Battery Defect from Plaintiff and Class members and made representations about the quality, safety, dependability, and comfort of the Class Vehicles. Defendants actively concealed and omitted the truth about the existence, scope, and nature of the Battery Defect from Plaintiff and Class members at all times, even though they knew about the Battery Defect and knew that information about the Battery Defect would be important to a reasonable consumer, and Ford promised in its marketing materials that Class Vehicles have qualities that they do not have.

f. **Why:**  Ford actively concealed and omitted material information about the Battery Defect in the Class Vehicles for the purpose of inducing Plaintiff and Class members to purchase Class Vehicles and made representations about the quality, safety, durability, and comfort of the Class Vehicles.

Had Defendants disclosed the truth about the Battery, Plaintiff and Class members (all reasonable consumers) would have been aware of it and would not have bought or leased the Class Vehicles or would not have paid as much for them.

## CLASS ACTION ALLEGATIONS

45.    Plaintiff brings this action on behalf of himself and as a class action, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the class (Class Members) are defined as follows:

**All persons in the United States who purchased a 2021-2023 Ford Bronco Sport or a 2022-2023 Ford Maverick equipped with a 12 volt battery having an internal weld and cast-on-strap that was manufactured by Camel Battery Group.**

46.    Plaintiff qualifies as a member of each of the proposed classes in the preceding paragraphs.

47.    Excluded from each of the putative classes are any person who falls within the definitions if the person is (i) an employee or independent contractor of Defendants; (ii) a relative of an employee or independent contractor of Defendants; (iii) an employee of the Court where this action is pending.

48.    The proposed class definitions in ¶ 45 as limited by ¶ 47 may be amended or modified from time to time.

49.    The members of Class are capable of being described without difficult managerial or administrative problems. The members of the putative classes are also readily identifiable from the information and records in the possession or control of Defendants or its affiliates and agents and from public records.

50.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

51.    The Proposed Classes are so numerous that the joinder of all members is impracticable.

52.    This action has been brought and may be properly maintained on behalf of the classes proposed herein under Federal Rule of Civil Procedure 23.

53.    **Numerosity: Fed. R. Civ. P. 23(a)(1)** Upon information and belief, the Class is so numerous that the joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information is in the sole possession of Defendants and obtainable by Plaintiff only through the discovery process. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice

dissemination methods, which may include U.S. Mail, Electronic Mail, internet postings, social media, and/or published notice.

54.    **Typicality: Fed. R. Civ. P. 23(a)(3)** Plaintiff's claims are typical of the claims of the Class because Plaintiff purchased a Class Vehicle that contained the same Fuel Pump Defect found in all other Class Vehicles.

55.    **Adequacy: Fed. R. Civ. P. 23(a)(4)** Plaintiff is an adequate class representative because his interests do not conflict with the interests of the Class that he seeks to represent. Plaintiff has retained counsel competent and highly experienced in complex and class action litigation, and he intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

56.    **Predominance and Superiority: Fed. R. Civ. P. 23(b)(3)** A class action is superior to all other available means for the fair and efficient adjudication of the claims of Plaintiff and Class Members, and questions of law and fact common to all Class Members predominate over questions affecting only individual class members. Class Members can be readily identified and notified based on, inter alia, Defendant's business records or other sources.

57.    **Common Questions of Fact and Law: Fed. R. Civ. P. 23(b)(4)** Common Questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class Members. These common legal and factual questions include, but are not limited to:

    a.   Whether Class Vehicles contain the alleged Battery Defect;

    b.   Whether the Battery Defect would be considered material by a reasonable consumer;

    c.   Whether the Battery Defect would constitute an unreasonable safety risk;

d.  Whether Defendants had a duty to disclose the Battery Defect to Plaintiff and other Class Members;

e.  Whether Defendants knew or reasonably should have known of the Battery Defect before Ford sold Class Vehicles to Plaintiff and Class Members;

f.  Whether the Battery Defect has diminished the value of the Class Vehicles;

g.  Whether the Camel Battery manufactured the defective battery;

h.  Whether Defendants should be declared financially responsible for notifying all Class Members of the problems with the Class Vehicles/Class Batteries and for the costs and expenses of repairing, replacing, or otherwise remedying the Battery Defect;

i.  Whether Defendants are obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose, repair, or replace their defective batteries;

j.  Whether Defendants breached the implied warranty of merchantability pursuant to state law and/or the UCC;

k.  Whether Defendants breached its express warranties under state law and/or the UCC

l.  Whether Defendants are liable for fraudulent omission;

m.  Whether Defendants were unjustly enriched;

n.  Whether Plaintiff and the other Class Members are entitled to damages and other monetary relief.

## **CAUSES OF ACTION**

### **COUNT I**
### **BREACH OF EXPRESS WARRANTY**

58.     Plaintiff incorporates paragraphs 1-57 as if fully set forth herein.

59.     Plaintiff brings this count on behalf of himself and the Class.

60.     Defendants are merchants with respect to the Class Vehicles.

61.     In its written express warranties, Ford expressly warranted that it would repair or replace defective parts free of charge if the defects became apparent during the warranty period.

62.     Ford's express written warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased their Class Vehicles equipped with the defective Batteries.

63.     Ford breached the express warranty to repair defects in materials and workmanship within the Class Vehicles.

64.     Plaintiff believes that Ford was provided notice of the Battery Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

65.     Furthermore, the express written warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because Ford has failed to adequately provide the promised remedies within a reasonable time.

66.     Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies allowable by law.

67.     Also, and as alleged in more detail herein, at the time that Ford warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and Ford improperly concealed material facts regarding its Class Vehicles.

Plaintiff and the other Class members were, therefore, induced to purchase or lease the Class Vehicles under false pretenses.

68.     Plaintiff believes that Camel Battery warrants the reliability of its batteries for either a duration of a specified time period or its use during a specified mileage driven by the vehicles in which the batteries are installed.

69.     The defective design of the batteries rendered the batteries useless when utilized as intended and contrary to their expressed warranties.

70.     As a direct and proximate result of the Defendants' breach of their express warranties Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

## COUNT II
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

71.     Plaintiff incorporates Paragraphs 1-57 as if fully set forth herein.

72.     Plaintiff brings this count on behalf of himself and the Class.

73.     Defendants are merchants and was at all relevant times involved in the distributing, warranting, and/or selling of the Class Vehicles.

74.     The Class Vehicles are "goods" under the relevant laws, and Defendants knew or had reason to know of the specific use for which the Class Vehicles, as goods, were purchased.

75.     Camel Battery's 12-volt batteries installed on Class Vehicles are "goods" under the relevant laws, and Defendant knew or had reason to know of the specific use for which the Class Vehicles, as goods, were purchased.

76.     Ford entered into agreements with consumers to sell the Class Vehicles to be used by Plaintiff and Class Members for personal use.

77.     The implied warranty of merchantability included with the sale of each Class Vehicle means that Ford guaranteed that the Class Vehicles would be fit for the ordinary purposes for which cars are used and sold and were not otherwise injurious to consumers. The implied warranty of merchantability is a critical part of the basis for the benefit of the bargain between Defendants, Plaintiff, and the Class Members.

78.     The implied warranty of merchantability included with the installation of the 12-volt car battery means that Camel Battery guaranteed that its batteries would be fit for the ordinary purposes for which car batteries are used and were not otherwise injurious to consumers. The implied warranty of merchantability is a critical part of the basis for the benefit of the bargain between Defendants, Plaintiff, and the Class Members.

79.     Defendants breached the implied warranty of merchantability because the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation. After all, Defendants did not indicate that the Class Vehicles would contain the Battery Defect.

80.     Given that Plaintiff and Class Members are unable to safely drive the Class Vehicles without risk of crashing—neither the Class Vehicles or Class Batteries are fit for their particular purpose of legal and safe transportation and usage.

81.     Defendants' warranties expressly apply to the purchaser of the Class Vehicles equipped with Class Batteries, creating privity between Defendants and Plaintiff and Class Members.

82.     Privity is not required because Plaintiff and Class Members are the intended beneficiaries of Defendants' warranties and sales. Defendants' warranties were designed for and intended to benefit the consumer only, including Plaintiff and Class Members.

83.    Defendants had been provided sufficient notice of its breaches of implied warranties associated with the Class Vehicles and Class Batteries. Defendants were put on actual notice of its breach through their review of consumer complaints as well as Ford's own recall.

84.    Had Plaintiff, Class Members, and the consuming public known that the Class Vehicles would not be provided with properly functioning batteries they would not have purchased the Class Vehicles or would have paid less for them.

85.    As a direct and proximate result of the foregoing, Plaintiff and the Class suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest, and fees, including attorneys' fees, as allowed by law.

86.    Plaintiff suffered injury in that he purchased a Vehicle that is worthless. For all intents and purposes, Plaintiff's vehicle is now an unsafe vehicle with a notoriously defective Battery

87.    Plaintiff also suffered economic loss in reference to the value of his vehicle. As a result of Ford's Recall, Plaintiff's Vehicle's resale value is now diminished. When Plaintiff intends to sell his Vehicle, the reputation of being a faulty vehicle will harm the resale value and place Plaintiff in a much worse bargaining position compared to if Defendants had properly manufactured, designed, produced, distributed, and advertised Class Vehicles with functioning Class Batteries.

88.    Plaintiff has suffered damages in that Plaintiff has been inconvenienced by Ford's Recall and accompanying required repairs. As discussed above, Plaintiff will spend hours upon hours tending to Ford's recall. The Battery Defect prevented the Class Vehicles from being roadworthy and reliable. But for this defect, Plaintiff would not have had to spend hours upon hours of his life tending to this Recall.

<u>**COUNT III**</u>
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**
**(15 U.S.C. § 2301 *ET SEQ.*)**

89.    Plaintiff incorporates paragraphs 1-53 as if fully set forth herein.

90.    Plaintiff brings this Count individually and on behalf of the Class.

91.    This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. §§ 1332 (a) and (d).

92.    Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 ET SEQ ("MMWA").

93.    Ford is a "supplier" and "warrantor" within the meaning of the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301(4)-(5).

94.    The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

95.    15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

96.    In its express written warranties, Ford expressly warranted that it would repair or replace defects in material or workmanship free of charge if those defects become apparent during the warranty period.

97.    Ford's warranties are written warranties within the meaning of the Magnuson Moss Warranty Act, 15 U.S.C. § 2301(6).  The Class Vehicles' implied warranty of merchantability is covered by 15 U.S.C.  § 2301(7).

98.    With respect to Class members' purchases of the Class Vehicles, the terms of Ford's written warranties and implied warranty became part of the basis of the bargain between Ford and Plaintiff and other Class members.

99.    Ford breached the implied warranty of merchantability. Without limitation, the Class Vehicles have a car battery that fails, as described above, which renders the Class Vehicles unmerchantable.

100.    At the time of sale of each Class Vehicle, Ford and Camel Battery knew, should have known, or were reckless in not knowing of the Class Vehicles' inability to perform as warranted because of the Battery Defect, but nonetheless failed to rectify the situation and/or disclose the Battery Defect.

101.    The amount in controversy of Plaintiff's individual claim exceeds the sum of $25. The amount in controversy in this action exceeds the sum of $50,000, exclusive of costs and interest, computed on the basis of all claims to be determined in this lawsuit.

102.    Plaintiff, individually and on behalf of the Class members, seeks all damages permitted by law, including diminution in value of their vehicles, in an amount to be proven at trial.

## COUNT IV
## NEGLIGENT DESIGN DEFECT

103.    Plaintiff incorporates Paragraphs 1-57 as if fully set forth herein.

104.    Plaintiff brings this claim against Defendants on behalf of himself and the Class Members.

105.    Defendants owed Plaintiff and the Class a duty to reasonably and safely design, manufacture, market, and sell the Class Vehicles and Class Batteries.

106.    Defendant breached this duty as the design and manufacture of the Class Vehicles and Class Batteries were defective, which caused the cars to not be fit or suitable for their intended purposes.

107.    Additionally, Defendants' defective design caused monetary damages to Plaintiff and the Class as the Class Vehicles now are worth less compared to the Class Vehicle's value prior to the existence of the Defect, given the notoriety of the Defect.

108.    Defendants did not exercise due care in the production of the Class Vehicles or Class Batteries. The Battery defect can cause the Class Vehicles to stall and exposes them to danger on the roadway.

109.    Plaintiff suffered injury through Defendants' conduct in that he suffered economic loss and purchased a vehicle that is now worthless and unsafe.

110.    Plaintiff also suffered economic loss in reference to the value of his vehicle. As a result of Ford's Recall, Plaintiff's Vehicle's resale value is now diminished. When Plaintiff intends to sell his Vehicle, the reputation of being a faulty vehicle will harm the resale value and place Plaintiff in a much worse bargaining position compared to if Defendants had properly manufactured, designed, produced, distributed, and advertised Class Vehicles and Class Batteries.

111.    Plaintiff also suffered damages in that Plaintiff has spent hours, and will spend hours more, tending to Ford's Recall. Plaintiff has been greatly inconvenienced by the Recall.

112.    The design of the Class Vehicles Class Batteries' defect is unacceptable as other vehicles produced by other companies and manufacturers equipped with other car batteries work properly and do not have this same defect. In fact, Ford has produced other vehicles for decades that do not have defects similar to the Class Vehicles.

113.    Plaintiff's Class Vehicle is in virtually identical condition as to when it left Defendant's factory.

114.    Further evidence of the Class Vehicles poor quality is the workmanship when compared to industry norms for the lifespan of the defective parts of the Class Vehicles, as mentioned earlier.

## COUNT V
## FRAUD BY OMISSION/CONCEALMENT

115.    Plaintiff incorporates paragraphs 1-53 as if fully set forth herein.

116.    Plaintiff brings this count on behalf of himself and the Class.

117.    Defendants were aware of the Battery Defect within the Class Vehicles and Class Batteries when the Class Vehicles were marketed and sold to Plaintiff and the other members of the Class.

118.    Having been aware of the Battery Defect within the Class Vehicles and Class Batteries and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Battery Defect, Defendant had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

119.    Defendants did not disclose the Battery Defect to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

120.    For the reasons set forth above, the Battery Defect within the Class Vehicles and Class Batteries comprises material information with respect to the sale of the Class Vehicles.

121.    In purchasing the Class Vehicles with the Class Batteries, Plaintiff and the other members of the Class reasonably relied on Defendants to disclose known material defects with respect to the Class Vehicles and Class Batteries.

122.    Had Plaintiff and the other members of the Class known of the Battery Defect within the Class Vehicles and Class Batteries, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

123.    Through their omissions regarding the Battery Defect within the Class Vehicles and Class Batteries, Defendants intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased or pay more for a Class Vehicle than they otherwise would have paid.

124.    As a direct and proximate result of Defendants' omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Battery Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

## COUNT VI
## UNJUST ENRICHMENT

125.    Plaintiff incorporates paragraphs 1-57 as if fully set forth herein.

126.    Plaintiff brings this count on behalf of himself and the Class.

127.    Plaintiff, and the other members of the Classes, conferred benefits on Defendants in the form of monies paid to purchase Ford's worthless Class Vehicles equipped with Camel Battery's defective battery.

128.    Ford voluntarily accepted and retained this benefit. Likewise, it is believed that Camel Battery benefited from the sale of their defective batteries to Ford. Both Defendants had knowledge and appreciation of this benefit, which was conferred upon them by and at the expense of Plaintiff and the Class Members.

129.    Because this benefit was obtained unlawfully, namely by selling and accepting compensation for the Class Vehicles and Class Batteries without providing properly function car

batteries in the Class Vehicles, it would be unjust and inequitable for Defendants to retain the benefit without paying the value thereof.

130.    The circumstances, as described herein, are such that it would be inequitable for Defendants to retain the ill-gotten benefit without paying the value thereof to Plaintiff and the Class Members.

131.    Defendants manufactured, marketed, and sold the Class Vehicles under the guise of these Vehicles being safe and operable, without failure of fuel delivery systems. Instead, Defendants sold Vehicles that were/are deadly crash risks, given the defective battery issues.

132.    Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and members of the Classes is unjust and inequitable, Defendants must pay restitution to Plaintiff and members of the Classes for its unjust enrichment, as ordered by the Court.

## COUNT VII
### NEGLIGENCE

133.    Plaintiff incorporates paragraphs 1-57 as if fully set forth herein.

134.    Plaintiff brings this count on behalf of himself and the Class.

135.    Defendants caused Class Vehicles and Class Batteries to be sold, distributed, marketed, promoted, and/or used by Plaintiff and the Proposed Class.

136.    At all times relevant to this litigation, Defendants had a duty to exercise reasonable care in the design, research, marketing, advertisement, supply, promotion, packaging, sale, and distribution of Class Vehicles equipped with Class Batteries, including the duty to take all reasonable steps necessary to provide effective and properly functioning car batteries in the Class Vehicles.

137.    Defendants breached this duty by providing Class Vehicles with the Battery Defect. For decades, Ford has produced other vehicles without this Battery Defect, which is evidence that

Ford did not exercise proper care in producing the Class Vehicles. Additionally, many other manufacturers produce vehicles with effective car batteries.

138.     Accordingly, at all times relevant to this litigation, Defendants knew or, in the exercise of reasonable care, should have known that not providing a properly functioning car battery could cause or be associated with Plaintiff's and Class Members' injuries.

139.     Defendants' alleged negligence included Selling and/or distributing the Class Vehicles equipped with defective Class Batteries.

140.     As a direct and proximate result of Defendants' negligence, Plaintiff and the Class have suffered and will continue to suffer actual monetary damages.

141.     But for Defendants' negligent design, production, and marketing of Class Vehicles, Plaintiff and the Class would not be injured as they would not have purchased the worthless Class Vehicles.

142.     Plaintiff's and Class Members' injuries were foreseeable as Ford had received complaints from Plaintiff and Class Members regarding failure to provide safely and effectively assembled vehicle parts in the Class Vehicles at the time of purchase of Defendants' Product.

143.     Further, it is foreseeable that a vehicle with a defective car battery would be a dangerous vehicle to drive. It is also reasonably foreseeable that Ford's Recall would harm the resale value of the Class Vehicles.

144.     As a result of Defendants' breach, Plaintiff and the Class were harmed in that they are now driving vehicles with defective car batteries given Defendants' confounding lack of due care in its design and product.

145.     Plaintiff and the Class Members seek actual damages, attorney's fees, costs, and any other just and proper relief available.

146.    Plaintiff suffered injury through Defendants' conduct in that he suffered economic loss and purchased a vehicle that is now worthless and unsafe.

147.    Plaintiff also suffered economic loss in reference to the value of his vehicle. As a result of Defendants' Recall, Plaintiff's Vehicle's resale value is now diminished. When Plaintiff and the Class intend to sell their respective Class Vehicles, the reputation of being a faulty vehicle would harm the resale value, compared to if Defendants had properly manufactured, designed, produced, distributed, and advertised Class Vehicles.

148.    Plaintiff also suffered damages in that Plaintiff has spent hours, and will spend hours more, tending to Defendants' Recall. Plaintiff and the Class have been greatly inconvenienced by Defendants' Recall.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff, on behalf of himself and members of the Classes, requests that the Court enter judgment in their favor and against Defendants, awarding as follows:

A. Certifying the Class as proposed herein, designating Plaintiff as Class representative, and appointing undersigned counsel as Class Counsel;

B. Declaring that Defendants are financially responsible for notifying the Proposed Classes Members of the pendency of this action;

C. Award all actual, general, special, incidental, statutory, and consequential damages to which Plaintiff and Class Members are entitled;

D. Scheduling a trial by jury in this action;

E. Awarding pre and post-judgment interest on any amounts awarded, as permitted by law;

F. Costs including reasonable attorneys' fees, court costs, and other litigation expenses; and,

G.  Any other relief the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff, individually and on behalf of all those similarly situated, hereby requests a jury trial, pursuant to Federal Rule of Civil Procedure 38, on any and all claims so triable.

Dated: January 31, 2025

Respectfully Submitted,

/s/ Stuart A. Carpey_____
**CARPEY LAW, P.C.**
Stuart A. Carpey
600 W. Germantown Pike, Suite 400
Plymouth Meeting, PA 19462
(610)834-6030
scarpey@carpeylaw.com
*Attorneys for Plaintiff and Putative Class*

-AND-

Paul J. Doolittle (*Pro Hac Vice forthcoming*)
**POULIN | WILLEY
ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
Tel: 803-222-2222
Fax: 843-494-5536
Email: paul.doolittle@poulinwilley.com
          cmad@poulinwilley.com

*Attorneys for the Plaintiff and Class*